UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

PEARLETTE MERRIWEATHER,

Plaintiff,

-vs-

Case No: 1:26-cv-2520
Honorable Paul L. Maloney
Magistrate Judge Ray S. Kent

CITY OF MUSKEGON HEIGHTS;
LASHAE SIMMONS, in her individual and official capacity;
DERRICK COLLINS, in his individual and official capacity;
WILLIAM KITCHEN, in his individual and official capacity;
TE SMITH, in his individual and official capacity;

Defendants.

---

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCHY, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@delaportelynch.com
Gina@delaportelynch.com

Michael S. Bogren (P34835)
Charles L. Bogren (P82824)
Evan P. Irvine (P88872)
Attorneys for Defendant
333 Bridge St., NW Suite 530
Grand Rapids, MI 49504
(616) 752-2600
mbogren@plunkettcooney.com
cbogren@plunkettcooney.com
eirvine@plunkettcooney.com

---

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES AND JURY DEMAND**

Defendants, CITY OF MUSKEGON HEIGHTS; LASHAE SIMMONS,DERRICK COLLINS, WILLIAM KITCHEN, and TE SMITH, by and through their attorneys, Plunkett Cooney, and for their answer to Plaintiff's Complaint, states as follows:

**VENUE AND JURISDICTION**

1. Defendant City of Muskegon Heights (hereinafter, "the City"), is a Michigan governmental entity situated entirely in Muskegon County, Michigan, in this Honorable Court's territorial jurisdiction.

__ANSWER:__ **It is admitted that the City of Muskegon Heights is a municipal entity located in Muskegon County.**

2. During all material times, Defendant Lashae Simmons (hereinafter, "Defendant Simmons"), was a Councilperson for the City of Muskegon Heights.

__ANSWER:__ **It is admitted that Lashae Simmons is a Councilperson for the City of Muskegon Heights. Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements "during all material times."**

3. During all material times, Defendant Derrick Collins (hereinafter, "Defendant Collins"), was a Councilperson for the City of Muskegon Heights.

__ANSWER:__ **It is admitted that Derrick Collins is a Councilperson for the City of Muskegon Heights. Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements "during all material times."**

4. During all material times, Defendant William Kitchen (hereinafter, "Defendant Kitchen"), was a Councilperson for the City of Muskegon Heights.

__ANSWER:__ **It is admitted that William Kitchen is a Councilperson for the City of Muskegon Heights. Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements "during all material times."**

5. During all material times, Defendant Te Smith (hereinafter, "Defendant Smith"), was an attorney for the City of Muskegon Heights.

__ANSWER:__ **It is admitted that Te Smith is the City Attorney for the City of Muskegon Heights. Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements "during all material times."**

6. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs asserts a federal due process claim.

__ANSWER:__ **Admitted.**

7. This Honorable Court maintains supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), because such claims arise from the same set of facts as the federal claim.

**ANSWER:** **It is admitted that the Court may choose to exercise supplemental jurisdiction over state law claims.**

8. Venue is proper pursuant to 28 U.S.C. §1391 because all of the acts complained herein occurred within the boundaries of this Honorable Court's territorial jurisdiction.

**ANSWER:** **It is admitted that Venue is proper before this Court.**

9. Plaintiff's requested monetary relief exceeds $25,000.00.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the requested monetary relief, but deny as untrue that Plaintiff is entitled to any monetary relief.**

10. Thus, legal jurisdiction and venue are proper in this Honorable Court.

**ANSWER:** **As previously stated, subject matter jurisdiction and venue are proper.**

## FACTS

### *Background*

11. Plaintiff incorporates the previous paragraphs as if contained herein.

**ANSWER:** **Defendants incorporate their previous answers, paragraphs 1 through 10.**

12. Ms. Merriweather was previously appointed as the Interim City Manager for the City of Muskegon Heights (hereinafter, "the City").

**ANSWER:** **Admitted.**

13. On or around August 13, 2025, Ms. Merriweather was appointed the Interim City Manager and signed a contract for this position that outlined her responsibilities, authority, and employment with the City.

**ANSWER:** **It is admitted that Plaintiff was appointed Interim City Manager in August 2025 and that she signed a contract outlining her position as an independent contractor for the City.**

14. Under this contract, Ms. Merriweather was responsible for executive administration, personnel oversight, departmental coordination, public relations, and municipal operations.

**ANSWER:** **It is admitted that the independent contractor agreement outlined Plaintiff's responsibilities in her interim role.**

15. The contract further stated that Ms. Merriweather was to act "in accordance with applicable law" and Ms. Merriweather may be terminated for "violation of law."

**ANSWER:** **Its is admitted that Plaintiff was expected to act in accordance with applicable law and that she could be terminated for violating the law.**

16. Soon after beginning her employment with the City, Ms. Merriweather became aware of some financial concerns.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16.**

17. On or about September 2025, Ms. Merriweather began noticing blanket purchase agreements with little factually detailed invoices that were directed to the City attorney, Te Smith, (hereinafter "Defendant Smith").

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.**

18. Ms. Merriweather reported her suspected violations of law to Mayor Bonnie McGlothin, expressing concern that the Seventeen Thousand ($17,000), monthly rate did not align with the Michigan Bar Association 2023 Salary Survey, given Defendant Smith's minimal experience in municipal, administrative, and government law.

**ANSWER:** **It is denied as untrue that Te Smith has "minimal experience in municipal, administrative, and government law." Defendants are without knowledge or**

**information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18.**

19. Deputy Finance Director Brenda Eilers informed Ms. Merriweather that Defendant Smith was paid via a blanket purchase agreement consisting of a single-page document with the date and payment amount for electronic transfer.

**ANSWER: It is denied as untrue that "blanket purchase agreements" are used by the City. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19.**

20. Ms. Merriweather kept raising her suspicions that there were violations of law.

**ANSWER: It is denied as untrue that the billing of a signed contract for legal work is a violation of law. Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 20.**

21. On or about October 6, 2025, Councilmembers became aware of Ms. Merriweather's concerns regarding Defendant Smith's payment.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.**

22. Before the October 6 meeting adjournment, Defendant Williams stated, "Please remit payment to the attorney [Defendant Smith] as soon as possible, the finance committee does not convene or vote on the attorney payments, the council does not vote on the attorney payment."

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the accuracy of the statement allegedly quoted in paragraph 22.**

23. On or about February 2026, Ms. Merriweather emailed Defendant Smith stating January 2026 invoice lacked sufficient detail to process payment.

**ANSWER: It is admitted that Plaintiff attempted to interfere with the payment owed Mr. Smith under his contract with the City.**

24. Ms. Merriweather included an example of a previous invoice Smith submitted for Downtown Development Authority work as a sample of what would suffice as a proper invoice format.

**ANSWER: It is admitted that Plaintiff attempted to interfere with the payment owed Mr. Smith under his contract with the City.**

25. Rather than providing the requested documentation directly to Ms. Merriweather, Defendant Smith contacted members of the City Council seeking their intervention to instruct Ms. Merriweather to pay his invoice.

**ANSWER: It is admitted that Plaintiff attempted to interfere with the payment owed Mr. Smith under his contract with the City, and that Mr. Smith contacted members of the City Council to seek the issuance of the owed payment.**

26. Ms. Merriweather firmly held that the City had an obligation to ensure proper invoices and documentation before distributing public funds.

**ANSWER: It is admitted that Plaintiff continued to interfere with the payment owed Mr. Smith under his contract with the City.**

27. Throughout the next few months, Ms. Merriweather spoke with Mayor Bonnie McGlothin, Mayor Pro Tem Kellie Kitchen, and Councilman Ronald Jenkins about her concerns regarding billing practices and the City's oversight of Defendant Smith's activities.

**ANSWER: It is admitted that Plaintiff spoke with a number of individuals associated with the City as she attempted to avoid fulfilling the City's obligation under a contract.**

28. On or around March of 2026, Ms. Merriweather emailed Defendant Smith regarding invoices and his demand for immediate payment.

**ANSWER: It is admitted that Plaintiff emailed Mr. Smith about her continuing attempts to avoid fulfilling the City's obligation under a contract.**

29. In that email, Ms. Merriweather explained the need for the City to comply with standard accounting principles and contracting legal standards for inspection and acceptance of goods and services.

**ANSWER:** **It is admitted that Plaintiff emailed Mr. Smith about her continuing attempts to avoid fulfilling the City's obligation under a contract.**

30. In response to Ms. Merriweather's email, Defendant Smith responded (including council members on the email), stating that Ms. Merriweather's behavior was unacceptable and that accounting and contract law principles were not the standard.

**ANSWER:** **It is admitted that Mr. Smith informed Plaintiff of her obligations under the contract with the City and that her refusal to perform was unacceptable.**

31. Following this exchange of emails, on or about April 27, 2026, Defendant Simmons delivered a lengthy tirade accusing Ms. Merriweather of being the issue, stating "it was not a problem until she got here."

**ANSWER:** **The allegations contained in paragraph 31 are denied as untrue.**

32. Simmons made a motion for "City Manager to pay the City Attorney without questions."

**ANSWER:** **It is admitted that a motion was made for the City to perform its contractual obligations regarding owed fees to Mr. Smith's firm.**

33. In addition to Ms. Merriweather's concerns regarding Defendant Smith's invoices, Ms. Merriweather also expressed concern about the use of Senior Millage Funds.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33.**

34. On or around December 2025, Darryl Todd submitted an invoice for snow removal services under the Senior Millage Program, totaling $3,500.00 for services allegedly rendered in December 2025.

**ANSWER:** **It is admitted that snow removal services were invoiced for work performed in December 2025.**

35. The invoice charged seven seniors on four different occasions for one hundred and twenty-five dollars ($125.00), per removal.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35.**

36. During routine review her monthly invoices, Ms. Merriweather identified the questionable nature of Darryl Todd's invoice for snow removal services under senior millage program.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36.**

37. Ms. Merriweather suspected that the services either had not been completed or were significantly overcharged.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.**

38. Consequently, Ms. Merriweather asked Chief Maurice Sain of the Muskegon Heights Police Department to investigate the invoice discrepancies.

**ANSWER:** **It is admitted that the City's police department was asked to investigate the invoice questions, and that the matter was referred to Norton Shores Police Department.**

39. In February 2026, Police Chief Sain assigned the matter to Detective Radcliff.

**ANSWER:** **It is denied as untrue that the matter was assigned to a "Detective Radcliff." Officer Ratliff of the Muskegon Heights Police Department may have been involved in an investigation.**

40. Chief Sain reported that the initial investigation found some senior residents stated they neither requested snow removal service nor received the service.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40.**

41. Chief Sain referred the inquiry to the Elder Abuse Taskforce housed in the Norton Shore Police Department, citing a presumed conflict of interest arising from a prior lawsuit involving Chief Sain or his family with Darryl Todd as the reason for referral.

**ANSWER:** **It is admitted that the Norton Shores Police Department was asked to investigate the matter and closed the case without charges. Defendants are without**

**knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 41.**

42. Detective Jared Paschier of Norton Shore Police Department contacted Ms. Merriweather regarding the investigation.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42.**

43. On or about March or April of 2026, Detective Paschier confirmed Chief Sain's findings and added that Carolyn Cook, Director of Senior Millage program, refused to speak without Union representation.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43.**

44. Ms. Merriweather spoke with Detective Paschier, who informed her the case was closed.

**ANSWER:** **It is admitted that the case was closed without charges being filed. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 44.**

45. On July 2, 2026, Detective Paschier told Ms. Merriweather that, per his supervisor, he was only allowed to provide her with the police report/complaint number.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45.**

46. After demonstrating success in her position as Interim City Manager, on or about April 27, 2026, the Board voted Ms. Merriweather into the permanent City Manager role.

**ANSWER:** **It is admitted that the Council voted to hire Plaintiff as the City Manager and "come to terms with a contract."**

47. Similar to Ms. Merriweather's insistence on legal compliance and financial documentation while she was Interim City Manager, Ms. Merriweather continued to question financial decisions that seemed vague or violative of law.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47.**

48. Prior to Ms. Merriweather's tenure as City Manager, Defendant Collins and Defendant Simmons participated in a sealed bid for foreclosed real estate owned by the city.

**<u>ANSWER:</u> It is admitted the Councilperson Collins and Councilperson Simmons participated in the bidding process for city-owned real estate.**

49. Both of their bids were two to three times less than the highest bidder, and despite not being the highest bidders, Defendants Collins and Simmons won the bids for the foreclosed real estate.

**<u>ANSWER:</u> It is admitted that Councilperson Collins and Councilperson Simmons won bids on city-owned real estate. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 49.**

50. Defendant Collins served as chair of Building and Lands Committee, and Simmons was also a committee member.

**<u>ANSWER:</u> It is admitted that Councilperson Collins and Councilperson Simmons have chaired or been a member of the Building and Lands Committee while on the Council.**

51. Following winning the bids for foreclosed real estate owned by the city, Mayor Bonnie McGlothin, while acting as City Manager, signed and executed a deed to Councilman Derrick Collins for a piece of property.

**<u>ANSWER:</u> It is admitted that a deed was executed transferring property to Councilperson Collins following the bid process.**

52. Mayor McGlothin stated she relied on Defendant Smith, acting as the City Attorney, to ensure all paperwork was proper before signing.

**<u>ANSWER:</u> It is admitted that the City utilized its City Attorney relating to land transfer. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52.**

53. During Ms. Merriweather's tenure, she learned there was no purchase agreement for the property deeded to Defendant Collins.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53.**

54. Following Ms. Merriweather's discovery, Defendant Collins communicated via email that he would no longer take care of the property unless he received a transfer of deed.

**<u>ANSWER:</u> It is admitted that Councilperson Collins was not responsible for property of which he was not the legal owner.**

55. Ms. Merriweather opposed the transfer of the deed to Defendant Collins, citing that there was no proof that Defendant Collins had purchased the property.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55.**

56. In May of 2026, Ms. Merriweather spoke with Mayor Pro Tem Kellie Kitchen about the deed transfer matter.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56.**

57. Mayor Pro Tem Kitchen informed Ms. Merriweather that Defendant Collins contacted her to assist with effectuating the transfer of deed.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57.**

58. Defendant Collins told Mayor Pro Tem Kitchen that he did not have the bill of sale or proof of purchase, stating that the document was at his son's house, but his son had since moved, and the document could not be found.

**<u>ANSWER:</u> It is admitted that Councilperson Collins did not have the document in his possession at that time.**

59. Despite a two-year lapse since the bidding, Defendants Collins and Simmons continued working to obtain the properties, and sales of properties stalled.

**<u>ANSWER:</u> It is admitted that sales of the properties in question had not been completed at that point.**

60. Defendant Collins requested the Council to vote to sell all real estate property as a whole instead of individually to ensure that both Defendants Simmons and Collins would receive the properties they wanted.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60.**

61. In addition to Ms. Merriweather's opposition of suspected violations of law regarding property sales, Ms. Merriweather also reported to the City Auditors, specifically Paul Matz of Rehmann, potential fraud, waste, and abuse of overtime in multiple City departments.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61.**

62. Ms. Merriweather reported that Fire Chief Shawnderick Robertson's overtime exceeded double his $90,000 salary.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62.**

63. Ms. Merriweather reported that the Department of Public Works regularly abused overtime, including opening and closing public bathrooms off regular hours, to receive three hours of pay at a time-and-a-half rate.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63.**

64. Ms. Merriweather reported that water emergencies (and associated overtime), decreased after water activities were removed from Director Guy Khi and Anthony Bradford's control.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64.**

65. Expanding on the suspected fraud in the Department of Public Works, despite the City receiving $2.4 million in 2024 and over $2 million in 2025 for road repair and maintenance, the City Department of Public Works has no record of any significant road repair or activities.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65.**

66. Given this, Ms. Merriweather raised concerns around April or May of 2026 over the poor road conditions, and she instructed Brenda Eilers (Deputy Finance Director), and Khi Guy (Department of Public Works Director), to collaborate on a plan of action for street repair and maintenance.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66.**

67. Director Guy submitted a plan, but it did not reflect the expected level of knowledge in project management or budgeting for his position.

**ANSWER:** **The allegations contained in paragraph 67 are denied as untrue.**

68. Ms. Merriweather informed Director Guy that he would present information on the road budget and plans to repair/maintain the City's streets at a town hall for the public on June 18, 2026.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68.**

69. Then, during the first week of June 2026, Director Guy informed Ms. Merriweather via email that he would not participate in the town hall, and he simply refused without an explanation.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69.**

70. The planned June 18, 2026, road repair plan presentation to Muskegon Heights residents did not occur.

**<u>ANSWER:</u> It is admitted that a road repair plan presentation did not take place on June 18, 2026. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70.**

71. Ms. Merriweather raised concerns over several months regarding the state of operation within the Department of Public Works.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71.**

72. Particular violations of law Ms. Merriweather presumed within the Department of Public Works included: (1) DPW worker misuse of city vehicles (via GEOTab monitoring review), (2) Abuse of overtime, (3) Conduct of DPW worker, (4) Poor condition of roads, (5) Poor condition of DPW main work facility, and (6) Director Guy's qualifications to hold his position.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 as plaintiff offers no specifics and includes several alleged "violations of law" that do not appear to be possible violations of law.**

73. Ms. Merriweather and Mayor Pro Tem Kellie Kitchen conducted an inspection of the Department of Public Works during March of 2026 in connection with these suspected violations of law.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 as plaintiff offers no specifics and includes several alleged "violations of law" that do not appear to be possible violations of law.**

74. Following all of the above outlined instances where Ms. Merriweather reported suspected violations of law, on June 8, 2026, during a regularly scheduled City Council meeting, Defendant Simmons made a privileged motion to immediately remove Ms. Merriweather from the City Manager position.

**<u>ANSWER:</u> It is admitted that Plaintiff was sought to be removed from her position due to performance issues. To the extent it is implied that the termination was retaliatory, those allegations are denied as untrue.**

75. Four Councilmembers voted in favor of the motion, and Ms. Merriweather was immediately escorted from the building.

**<u>ANSWER:</u> It is admitted that a majority of the City Council voted for the motion.**

76. Without discussion or a supporting rationale for Ms. Merriweather's termination, the Council appointed Fire Chief Shawnderick Roberson as the new City Manager.

**<u>ANSWER:</u> It is admitted that Fire Chief Shawnderick Roberson was appointed as the interim City Manager. The remaining allegations contained in paragraph 76 are denied as untrue.**

77. Following Ms. Merriweather's retaliatory termination, on June 9, 2026, Defendant Kitchen made the following defamatory remarks regarding Ms. Merriweather on 103.7 Radio and Facebook Live:

a. "[Ms. Merriweather] opened the door to bring the State Treasury to co-op or to absorb into our income tax department" – Kitchen
b. Ms. Merriweather failed to meet her promise to set up recreation activities. – Kitchen
c. Ms. Merriweather had "taken off the table" the forensic audit –Kitchen

**<u>ANSWER:</u> It is denied as untrue that Plaintiff was terminated in a retaliatory fashion, or that any comments regarding her poor performance were defamatory.**

78. The following day, the Council planned a special meeting, but it was canceled due to lack of quorum.

**<u>ANSWER:</u> It is admitted that a special meeting was not held on June 9, 2026.**

79. Instead of departing the chamber because of the lack of a quorum, those who had gathered turned the proposed meeting into a press conference.

**<u>ANSWER:</u> It is admitted that some individuals took questions from reporters present at the Muskegon Heights City Hall on June 9, 2026.**

80. Defendant Kitchen attended via Zoom; Defendant Simmons, Defendant Collins, and Defendant Smith were physically present.

**ANSWER:** **It is admitted that Councilperson Simmons, Councilperson Collins, and Mr. Smith were present at the Muskegon Heights City Hall on June 9, 2026, and that Councilperson Kitchen appeared via video conference.**

81. Mayor Bonnie McGlothin stated to news outlets WOOD TV 8 and/or WZZM TV 13 that she did not call for the special meeting and knew nothing about it.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81.**

82. During this impromptu press conference, Defendant Simmons and Defendant Collins stated to WOOD TV 8:

a. "It's my understanding that approximately $450,000 in city funds was spent without prior council approval;" – Simmons
b. "Simmons said the funds involved a reimbursement that was taken from savings and never returned;"
c. "Unfortunately, as of today and the conversation with finance it did not return to where it was supposed to be;" – Simmons
d. "[Derrick] Collins echoed many of Simmons' concerns. Collins said he and Simmons received multiple complaints regarding Merriweather's leadership and management style."
e. "Since I mentioned it, ... that person got scolded for telling me by the person that was released on Monday;" –Simmons
f. "90% of city staff expressed concerns regarding her manager and leadership style;" –Collins

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the accuracy of the quotations contained in paragraph 82, but to the extent the implication is that Defendants made any defamatory statements, those allegations are denied as untrue.**

83. Defendant Simmons continued to disseminate additional defamatory remarks about Ms. Merriweather, including statements to WZZM TV 13:

a. "She [Lashae Simmons] cited a non-specified $450,000 expenditure without council approval that was never refunded as a key reason." – Simmons

b. "The contract states that anything over $5,000 must come to the Council. It did not come to the Council. So, you are what? In breach of contract. So being in breach of contract, we have to make some decisions;" – Simmons

c. "Tomorrow, when Councilman Collins has his finance meeting and I sit on that committee, we are going to go through those papers, and we are going to find out the real information." – Simmons

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the accuracy of the quotations contained in paragraph 83, but it is denied as untrue that Defendants made defamatory statements.**

84. As a result of Defendants' retaliatory and defamatory conduct, Ms. Merriweather has suffered emotional distress and significant damage to her reputation.

**ANSWER: The allegations contained in paragraph 84 are denied as untrue.**

85. Wherefore, Plaintiff states the following Counts against Defendants:

**ANSWER: It is denied as untrue that Plaintiff is entitled to any relief for the alleged causes of action.**

**COUNT I**

***Defamation***
***As to All Defendants***

86. Plaintiff incorporates the previous paragraphs as if contained herein.

**ANSWER: Defendants incorporate their previous answers, paragraphs 1 through 85.**

87. The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. *Mitan v Campbell*, 474 Mich 21, 24 (2005).

**ANSWER: The allegations contained in paragraph 87 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

88. "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Sarkar v Doe*, 318 Mich App 156, 178 (2016).

**ANSWER:** **The allegations contained in paragraph 88 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

89. With respect to a public figure, the defamatory statement must also have been made with "actual malice." *Edwards v Detroit News, Inc*, 322 Mich App 1, 12 (2017).

**ANSWER:** **The allegations contained in paragraph 89 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

90. A statement is made with "actual malice" when the publisher knows that the statement was false, or made the statement with reckless disregard of whether it was false or not. *Milkovich v Lorain Journal Co*, 497 US 1, 14 (1990).

**ANSWER:** **The allegations contained in paragraph 90 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

91. Defendants made defamatory statements about Ms. Merriweather when they distributed false information suggesting that Ms. Merriweather expended $450,000 without prior council notice, along with the Defendants' other remarks to local news outlets.

**ANSWER:** **The allegations contained in paragraph 91 are denied as untrue.**

92. Defendants' slanderous claims concerning the circumstances of Ms. Merriweather's termination were not a fair and true representation of Ms. Merriweather's actions, and such claims contained clearly false information that Ms. Merriweather committed violations of law.

**ANSWER:** **The allegations contained in paragraph 92 are denied as untrue.**

93. Defendants knew or should have known that their statements during their secret meeting with the press were false, as there was no evidence that Ms. Merriweather had engaged in any financial misconduct.

**ANSWER:** **The allegations contained in paragraph 93 are denied as untrue.**

94. Defendants were acting outside of their official capacities when they made defamatory statements about Ms. Merriweather because the statements were not made while Defendants were in Council meetings and Defendants were speaking as individuals.

**ANSWER:** **The allegations contained in paragraph 94 are denied as untrue.**

95. Defendants' statements were made to third parties (i.e., multiple press outlets, including WOOD TV 8, WZZM TV 13, and on Facebook Live).

**ANSWER:** **It is admitted that Defendants' non-defamatory statements were made to third parties.**

96. Defendants' statements were intentional, made with actual malice, negligence, and/or reckless disregard for the truth.

**ANSWER:** **The allegations contained in paragraph 96 are denied as untrue.**

97. Defendants' defamatory statements were defamation per se, and thus, damages are presumed; nonetheless, Defendants' statements caused Ms. Merriweather to suffer profound damages, including, but not limited to, mental suffering, emotional distress, embarrassment, and humiliation, significantly harming Ms. Merriweather's professional and personal life.

**ANSWER:** **The allegations contained in paragraph 97 are denied as untrue.**

98. WHEREFORE, Plaintiff respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

**ANSWER:** **It is denied as untrue that Plaintiff is entitled to any relief.**

## COUNT II

***Violation of Procedural Federal Due Process and Violation of State Due Process under the Michigan Constitution Article I § 17 as to all Defendants Through the Vehicle of 42 U.S.C. § 1983***

99. Plaintiff incorporates the previous paragraphs as if contained herein.

**ANSWER:** **Defendants incorporate their previous answers, paragraphs 1 through 98,**

100. Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

**ANSWER:** **The allegations contained in paragraph 100 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

101. The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV.

**ANSWER:** **The allegations contained in paragraph 101 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

102. The Michigan Constitution likewise prohibits the State from depriving any person of life, liberty, or property without due process of law.

**ANSWER:** **The allegations contained in paragraph 102 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

103. Defendants deprived Ms. Merriweather of her liberty and property interest in her position as City Manager without due process of law when she was abruptly terminated.

**ANSWER:** **The allegations contained in paragraph 103 are denied as untrue.**

104. Defendants further denied Plaintiffs due process by denying her notice of the accusations against her, notice of her impending termination, and an opportunity to be heard prior to her termination.

**ANSWER: The allegations contained in paragraph 104 are denied as untrue.**

105. As a result of this violation of Due Process, Plaintiff has suffered severe economic and non-economic damages, as well as emotional distress.

**ANSWER: The allegations contained in paragraph 105 are denied as untrue.**

WHEREFORE, Plaintiff respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

**ANSWER: It is denied as untrue that Plaintiff is entitled to any relief.**

## COUNT III

***Violation of Plaintiff's Constitutional Liberty Interest in her Good Name As to All Defendants***

106. Plaintiff incorporates the previous paragraphs as if contained herein.

**ANSWER: Defendants incorporate their previous answers, paragraphs 1 through 105.**

107. Defendants falsely stated that Ms. Merriweather expended $450,000 in City funds without Council knowledge or approval.

**ANSWER: The allegations contained in paragraph 107 are denied as untrue.**

108. These false statements were published to the public online, via news articles and Facebook Live.

**ANSWER: The allegations contained in paragraph 108 are denied as untrue.**

109. Defendants acted intentionally or grossly negligently in publishing these false statements about Ms. Merriweather.

**ANSWER: The allegations contained in paragraph 109 are denied as untrue.**

110. Defendants were acting outside of their official capacities when they made these statements about Ms. Merriweather because the statements were not made while Defendants were in Council meetings and Defendants were speaking as individuals.

**<u>ANSWER:</u> The allegations contained in paragraph 110 are denied as untrue.**

111. As a result of Defendants' defamation, Ms. Merriweather has suffered both economic and non-economic damages, including but not limited to barriers to professional advancement resulting in lost future opportunities, wages, and benefits, damage to her reputation, and severe emotional distress.

**<u>ANSWER:</u> The allegations contained in paragraph 111 are denied as untrue.**

WHEREFORE, Plaintiff respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

**<u>ANSWER:</u> It is denied as untrue that Plaintiff is entitled to any relief.**

## <u>COUNT IV</u>

***Violation of the Whistleblower Protection Act – Retaliation***
***As to All Defendants***

112. Plaintiff incorporates the previous paragraphs as if contained herein.

**<u>ANSWER:</u> Defendants incorporate their previous answers, paragraphs 1 through 112.**

113. Plaintiff can establish a violation of Michigan's Whistleblower Protection Act ("WPA") claim by demonstrating that (1) she engaged in a protected activity; (2) she was discharged, threatened, or otherwise discriminated against; and (3) there was a causal connection between the employee's protected activity and the defendants' retaliatory action. *Henderson v. City of Flint*, 751 Fed. Appx. 618, 619 (6th Cir. 2018).

**<u>ANSWER:</u> The allegations contained in paragraph 113 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

114. Under the WPA, there are three types of protected activity: '(1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation.'" *Henderson v. City of Flint, Michigan*, 751 F. App'x 618 (6th Cir. 2018) (citing to *Kuhn v. Washtenaw County*, 709 F.3d 612, 629 (6th Cir. 2013).

**<u>ANSWER:</u> The allegations contained in paragraph 114 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

115. Ms. Merriweather engaged in activity protected by the WPA when she reported suspected fraudulent activity to the officials within the City, a public body.

**<u>ANSWER:</u> Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 115.**

116. Ms. Merriweather was terminated, threatened, and discriminated against when the City terminated her employment as the City Manager.

**<u>ANSWER:</u> The allegations contained in paragraph 116 are denied as untrue.**

117. The temporal proximity between protected activity and the threatening and/or discriminatory action "helps to establish an inference of retaliation;" however, if temporal proximity is insufficient to establish a causal connection, then evidence of the plaintiff's declining relationship with the defendant suffices. *See*, *Id*. at 626.

**<u>ANSWER:</u> The allegations contained in paragraph 117 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

118. There is a causal connection because the City's termination of Ms. Merriweather's employment occurred shortly after Ms. Merriweather's protected activity of reporting suspected violations of law to the City.

**<u>ANSWER:</u> The allegations contained in paragraph 118 are denied as untrue.**

119. Further, there is a causal connection because there was a declining relationship between Ms. Merriweather and Defendants, evidenced by the contentious emails between Defendant Smith and Ms. Merriweather regarding Defendant Smith's invoices.

**<u>ANSWER:</u> The allegations contained in paragraph 119 are denied as untrue.**

120. As a result of this unlawful retaliation, Plaintiff has suffered severe economic and non-economic damages, as well as substantial emotional distress.

**ANSWER: The allegations contained in paragraph 120 are denied as untrue.**

121. WHEREFORE, Plaintiff respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

**ANSWER: It is denied as untrue that Plaintiff is entitled to relief.**

## COUNT V

***Termination in Violation of Public Policy (Plead in the Alternative)***
***As to All Defendants***

122. Plaintiff incorporates the previous paragraphs as if contained herein.

**ANSWER: Defendants incorporate their previous answers, paragraphs 1 through 121.**

123. Ms. Merriweather was working for the City when she reported suspected fraudulent activity (violations of law), to the City.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 123.**

124. After receiving notice of these suspected violations, the City terminated Ms. Merriweather from her employment in retaliation for reporting these violations.

**ANSWER: The allegations contained in paragraph 124 are denied as untrue.**

125. The City's conduct in terminating Ms. Merriweather violated public policy because it discourages employees from reporting illegal activities.

**ANSWER: The allegations contained in paragraph 125 are denied as untrue.**

126. As a result of the City's discharge of Ms. Merriweather, Ms. Merriweather has suffered both economic and non-economic damages.

**ANSWER: The allegations contained in paragraph 126 are denied as untrue.**

WHEREFORE, Plaintiff respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

**ANSWER:** **It is denied as untrue that Plaintiff is entitled to any relief.**

**COUNT VI**

***False Light***
***As to All Defendants***

127. Plaintiff incorporates the previous paragraphs as if contained herein.

**ANSWER:** **Defendants incorporate their previous answers, paragraphs 1 through 126.**

128. Under Michigan law, a false light claim requires that "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Found. for Behavioral Res. v. W.E. Upjohn Unemployment Tr. Corp.*, 332 Mich. App. 406, 410 (2020).

**ANSWER:** **The allegations contained in paragraph 128 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

129. Plaintiff can establish a false-light claim by establishing "that when the defendant disseminated the information, it was done with actual knowledge or reckless disregard of the truth or falsity of the publicized matter." *Id*.

**ANSWER:** **The allegations contained in paragraph 129 are not properly pled factual allegations but instead contain improperly pled legal allegations that do not call for a response. To the extent a response is called for, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of Plaintiff's legal conclusions.**

130. Defendants' dissemination of untrue information to multiple news outlets painted Ms. Merriweather in a false light that her termination was caused for reasons other than the City's pretextual retaliation for engaging in protected activity.

**ANSWER:** **The allegations contained in paragraph 130 are denied as untrue.**

131. Defendants knowingly and/or recklessly disseminated information that portrayed Ms. Merriweather in a false light when they reported untrue statements to multiple news outlets that Ms. Merriweather expended $450,000 in City funds without prior Council approval.

**ANSWER:** **The allegations contained in paragraph 131 are denied as untrue.**

132. Defendants were acting outside of their official capacities when they made these statements about Ms. Merriweather because these statements were not made while Defendants were in Council meetings and Defendants were speaking as individuals.

**ANSWER:** **The allegations contained in paragraph 132 are denied as untrue.**

133. Defendants' actions were done with the intent of harming Ms. Merriweather's reputation and placing her in a false light that is highly offensive to a reasonable person.

**ANSWER:** **The allegations contained in paragraph 133 are denied as untrue.**

134. Ms. Merriweather suffered damages as a result of Defendants' actions, including, but not limited to, emotional distress and damage to her professional reputation.

**ANSWER:** **The allegations contained in paragraph 134 are denied as untrue.**

WHEREFORE, Plaintiff respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

**ANSWER:** **It is denied as untrue the Plaintiff is entitled to relief.**

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court does the following:

a. Find that Defendants are liable for defamation.
b. Find that Defendants violated Ms. Merriweather's Federal and State Constitutional rights to Due Process.
c. Find that Defendants violated Ms. Merriweather's Constitutional liberty interest in her good name.
d. Find that Defendants violated the Whistleblower Protection Act by retaliating against Ms. Merriweather for reporting Defendants' violation of law.
e. Find that Ms. Merriweather was terminated in violation of public policy.
f. Find that Defendants are liable for false light.
g. Award to Plaintiff all appropriate compensation, fines, and penalties against Defendants available under law.

h. Award Plaintiff her attorney fees and costs.
i. Provide any other relief to Plaintiff that this Honorable Court deems fit.

**ANSWER:** **It is denied as untrue that Plaintiff is entitled to any relief.**

Respectfully Submitted,

PLUNKETT COONEY

Dated: October 19, 2026

By: */s/ Charles L. Bogren*
Charles L. Bogren (P82824)
Michael S. Bogren (P34835)
Evan P. Irvine (P88872)
Attorneys for Defendants
333 Bridge St., NW Suite 530
Grand Rapids, MI 49504
(616) 752-4600
cbogren@plunkettcooney.com
mbogren@plunkettcooney.com
eirvine@plunkettcooney.com

## AFFIRMATIVE DEFENSES

NOW COME defendants, City of Muskegon Heights, Lashae Simmons, Derrick Collins, William Kitchen, and Te Smith, by and through their attorneys, PLUNKETT COONEY, and raise the following Affirmative Defenses to the Plaintiff's Complaint:

1. Plaintiff Complaint fails to state a claim upon which relief can be granted against each Defendant, individually and collectively.

2. Plaintiff was retained by the City as an independent contractor and was not an "employee" within the meaning of the Michigan Whistleblowers' Protection Act, MCL 15.361 et seq., and therefore cannot maintain a claim under that Act or for wrongful discharge in violation of public policy.

3. Plaintiff had no constitutionally protected property interest in continued employment or engagement as Interim City Manager and/or City Manager, as she served at

the will and pleasure of the City Council, the City Charter, and applicable law, and no contract for the permanent City Manager position had been finalized.

4. Any action taken with respect to Plaintiff was based on legitimate, non-retaliatory, and non-discriminatory reasons, including Plaintiff's performance, and Defendants would have taken the same action regardless of any alleged protected activity.

5. The individual Defendants are entitled to qualified immunity from Plaintiff's federal claims because their conduct did not violate any clearly established statutory or constitutional right of which a reasonable person would have known.

6. Defendants Simmons, Collins, and Kitchen are entitled to absolute legislative immunity for their votes, motions, and other legislative acts as members of the Muskegon Heights City Council, including the vote to remove Plaintiff.

7. Plaintiff's state law tort claims against the City are barred by governmental immunity under the Governmental Tort Liability Act, MCL 691.1401 et seq., as the City was engaged in the exercise or discharge of a governmental function and no statutory exception applies.

8. Defendants Simmons, Collins, and Kitchen, as elective officials of the City, are absolutely immune from tort liability under MCL 691.1407(5) for acts and statements made within the scope of their legislative and executive authority.

9. The individual Defendants are entitled to governmental immunity under MCL 691.1407(2) and *Odom v Wayne County*, 482 Mich 459 (2008), because they acted in the course of their employment or service, within the scope of their authority, in good faith and without malice, and their conduct was not grossly negligent or the proximate cause of any injury.

10. The City cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior, and no policy, practice, or custom of the City, or decision of a final policymaker, was the moving force behind any alleged constitutional deprivation. Plaintiff's official-capacity claims against the individual Defendants are duplicative of her claims against the City.

11. The statements alleged in the Complaint were true or substantially true, and truth is a complete defense to Plaintiff's defamation, false light, and liberty interest claims.

12. The statements alleged in the Complaint constitute opinion, rhetorical hyperbole, or statements not provably false, and are protected by the First Amendment to the United States Constitution and Article I, § 5 of the Michigan Constitution.

13. Plaintiff, as Interim City Manager and/or City Manager, was a public official and/or public figure, and no statement at issue was made with actual malice, i.e., with knowledge of falsity or reckless disregard for the truth.

14. The statements alleged in the Complaint were absolutely and/or qualifiedly privileged, including as statements by public officials on matters of public concern, communications made in the discharge of official duties, and fair comment on the conduct of a public official and the expenditure of public funds.

15. The statements alleged are not defamatory per se, and Plaintiff has not pled or suffered special damages caused by any publication.

16. Plaintiff's liberty interest claim fails because Plaintiff did not request, and was not denied, a name-clearing hearing; and the alleged statements did not impute dishonesty, immorality, or moral turpitude and were not made in connection with her removal.

17. Plaintiff may not have reported, or was not about to report, a violation or suspected violation of a law, regulation, or rule to a "public body" as defined by MCL

15.361(d), and any alleged reports were not made in good faith or did not concern violations of law.

18. Plaintiff's claims may be barred, in whole or in part, by the applicable statutes of limitations.

19. Plaintiff's claim for termination in violation of public policy is preempted by the Whistleblowers' Protection Act, which provides the exclusive remedy for the retaliation alleged. Further, the individual Defendants were not Plaintiff's employer and cannot be liable on that claim.

20. Plaintiff has no cognizable claim for money damages against a municipality or individual government officials for alleged violations of the Michigan Constitution, Art. I, § 17. *Jones v Powell*, 462 Mich 329 (2000).

21. Plaintiff had adequate state-law and contractual remedies available to address any alleged deprivation, which satisfies any process that was due.

22. Plaintiff may have failed to mitigate her alleged damages, if any.

23. Any recovery by Plaintiff must be reduced or set off by any compensation, earnings, benefits, or other amounts received by Plaintiff, including any amounts paid under her agreement with the City.

24. Plaintiff's claims fail as to any individual Defendant who did not personally make, publish, or participate in the alleged statements or conduct attributed to that Defendant.

Respectfully Submitted,

PLUNKETT COONEY

Dated: October 19, 2026

By: *__/s/ Charles L. Bogren______________________*

Charles L. Bogren (P82824)
Michael S. Bogren (P34835)
Evan P. Irvine (P88872)
Attorneys for Defendants
333 Bridge St., NW Suite 530
Grand Rapids, MI 49504
(616) 752-4600
cbogren@plunkettcooney.com
mbogren@plunkettcooney.com
eirvine@plunkettcooney.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

PEARLETTE MERRIWEATHER,

Plaintiff,

-vs-

CITY OF MUSKEGON HEIGHTS, ET Al

Defendants.

Case No: 1:26-cv-2520
Honorable Paul L. Maloney
Magistrate Judge Ray S. Kent

---

**JURY DEMAND**

Defendants, City of Muskegon Heights, Lashae Simmons, Derrick Collins, William Kitchen, and Te Smith, by and through their attorneys, Plunkett Cooney, and requests a jury trial in this matter.

Respectfully Submitted,

PLUNKETT COONEY

Dated: October 19, 2026

By: */s/ Charles L. Bogren*

Charles L. Bogren (P82824)
Michael S. Bogren (P34835)
Evan P. Irvine (P88872)
Attorneys for Defendants
333 Bridge St., NW Suite 530
Grand Rapids, MI 49504
(616) 752-4600
cbogren@plunkettcooney.com
mbogren@plunkettcooney.com
eirvine@plunkettcooney.com